**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | **No.  07 CR 815** |
| **v.** | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| **DONALD RALLS, et. al.** | ) | |
| | ) | |

**DEFENDANT DONALD RALLS' POSITION PAPER ON SENTENCING**

Defendant Donald Ralls, by and through counsel, Theodore T. Poulos, Terence H. Campbell, and Matthew S. Ryan of Cotsirilos, Tighe & Streicker, respectfully submits this Position Paper on Sentencing.

**I.      INTRODUCTION AND SUMMARY**

On January 14, 2008, Donald Ralls pleaded guilty to one count of filing a false income tax return.  Mr. Ralls is almost 63 years old.  By all accounts he is a kind and decent man.  He is a devoted husband.  He is a very dedicated father who provides, both emotionally and financially, for his two bi-polar sons, both of whom suffer from drug and alcohol addictions, and one of whom has repeatedly attempted suicide.  Finally, Mr. Ralls is an engaged grandfather, loyal friend, and good neighbor, who served his country in the Vietnam War.

Mr. Ralls is scheduled to be sentenced on Friday, May 2, 2008.  The Sentencing Guidelines yield an advisory sentencing range of 0 to 6 months imprisonment.  For the reasons set forth below, we respectfully request that the Court impose a sentence of probation with any conditions the Court deems appropriate.

## II.    DONALD RALLS' BACKGROUND AND CHARACTER

### A.    Childhood and Upbringing

Donald Ralls was one of the first baby boomers.  He was born August 24, 1945 in Cape Girardeau, Missouri.  (PSR at 4. 105). He has two younger siblings, Sharon Peppers (60) who lives in Northlake, Illinois, and Billy Ralls (55) who lives in Arkansas.[1] Mr. Ralls' father, Lloyd, was a laborer. (PSR at 5. 110).  He was also an alcoholic.  (PSR at 4.  108).  While he never physically abused his children, he was routinely under the influence around the children and "yelled a lot and scared everyone" (PSR at 4. 109).  Mr. Ralls' parents' marriage was tumultuous and they divorced in approximately 1955 when Mr. Ralls was only ten years old.  (PSR at 4. 107).  His father died eleven years later in 1966 from cirrhosis of the liver and bronchial asthma.  (PSR at 5. 110-111).

About three years after his parents divorced and when he was thirteen, Mr. Ralls' mother remarried.  (PSR at 5. 111-112).  But, Mr. Ralls did not form a close bond with his stepfather.  They had "different views on things." (PSR at 5.  112-113).  As a result of this conflict with his stepfather, Mr. Ralls left his mother's home as a teen and moved in with his brother, where he lived until 1967 when he entered the Army.  (PSR at 5.  122-123).

### B.    Military Service

Mr. Ralls is a combat veteran of the Vietnam War.  He served primarily alongside the 109th Infantry Division in the MeKong River Delta at Dong Tam, which was the starting point for many "Riverine" operations.  The Riverine Assault Force was a division of the Navy that conducted offensive missions along the MeKong River and other waterways in Vietnam.

---

[1]  Mr. Ralls' father also had children from a prior marriage, Harold Ralls (deceased), and Lloyd and Martin Ralls, whose ages and whereabouts are unknown.  (PSR at 5. 117-118).

Mr. Ralls was honorably discharged from the Army on November 5, 1969. (PSR at 7. 189-190). He ended his service a decorated veteran. (PSR at 7. 192-194). He was awarded a Bronze Star, the National Defense Service Medal, the Vietnam Service Medal, an Expert (Rifle) Badge, and a Vietnam Campaign Medal. Mr. Ralls remained on "standby" reserve until November 1973. (PSR at 7. 190).

### C.     Education and Work History

Mr. Ralls' education did not continue beyond the eighth grade. He quit school about two years after his parents had divorced, and at the age of twelve, Mr. Ralls started working for a neighbor in the scrap metal business. (PSR at 5. 121). In only his teens, Mr. Ralls worked primarily as a laborer and from roughly 1965 to 1967, he worked at Borg Warner as a punch-press operator until he entered the Army at the age of 22. When he returned from Vietnam, Mr. Ralls returned to Borg Warner and worked there from approximately 1970-1971. In 1971, Mr. Ralls started as a laborer with the Village of LaGrange, Illinois, where he worked until 1976. While working for LaGrange, he had applied for a job with the Village of Bolingbrook, and in 1976 he got a job with Bolingbrook as a laborer. Mr. Ralls worked for the Village until his retirement in June 2001. He was steadily promoted - from Laborer to Equipment Operator to Vehicle Maintenance Foreman, and finally to Superintendent of the Building and Fleet Division of the Public Works Department. As Superintendent, Mr. Ralls oversaw the vehicle fleet and the buildings and grounds for the Village. In this capacity, Mr. Ralls committed the offense conduct giving rise to this case.

In 2001, following his retirement from the Village of Bolingbrook, Mr. Ralls worked as a maintenance man at Fairfield Inn in Naperville, making $10 per hour. (PSR at 7. 183-185). When his hours were reduced, Mr. Ralls resigned, as the money was no longer worth the commute. (PSR

at 7.  184-185).  Mr. Ralls currently works part time as a maintenance man for his wife's family-owned temporary employment agency in Stone Park, Illinois.  (PSR at 5.  125-126).

### D.    Devotion to Family and Friends

On November 25, 1969, less than a month after his honorable discharge from the Army, Donald Ralls married Domenica (nee: DeSimone) Ralls.  (PSR at 5.  124).  They have three children: Christina D'Andrea (36), Donald Ralls (34), and Anthony Ralls (29).  *Id.*  Mr. Ralls also has been blessed with four grandchildren from his daughter Christina, ages two to nine.  (Exhibit A, Letter from Christina D'Andrea to the Court).

Mr. Ralls is completely devoted to his family and their well-being is his paramount concern. He is described as the "rock" of the family - the "glue" that holds it together.  (Exhibit B, Letter from Anthony Ralls to the Court).  His daughter, Christina, frequently relies on Mr. Ralls to babysit his grandchildren.  (Exhibit A).  Of course, the grandchildren benefit from their time with Mr. Ralls, and they would not be able to understand his absence in the event he is incarcerated.  *Id.*

Donald Ralls is the kind of man who always thinks of others before he thinks of himself.  He has become the quintessential grandfather.  With his shock of white hair, he likes to play Santa Claus, and every Christmas he makes sure that every child on both his side and Domenica's side of the family has a gift.  (Exhibit C, Letter from Domenica Ralls to the Court).  But Mr. Ralls' consideration for others extends beyond his immediate family.  He is also an exemplary neighbor with a charitable heart.  As his wife Domenica puts it:

> Donny is one of the kindest, most giving, and loving person's [sic].  He always helps every one.  Our next door neighbor is an older man and he is alone, Donny goes over to check on him all the time, he brings him food, and helps him around the yard.  His flag was frayed, so he went and bought him a new flag.  The people across the street do not have very much money, they were expecting another child

and could not afford to buy a bed for their older child, Donny gave them a bunk
bed set, also gave the little girl toys that our grand daughter had out grown.  He
seems to give to every charity that mails asking for donations, especially if they
are supporting children.

*Id*.

###    E.    Family Struggles With Mental Illness and Addiction

Sadly, as adults, Mr. Ralls' two sons have not had the idyllic family life his daughter enjoys.

Both of his adult sons, Anthony (29) and Donald, Jr. (34), suffer from mental illness and have battled

substance abuse problems.  *Id.*  To this day, both rely extensively on their father for emotional and

financial support.  (Exhibit D,  Letter from Donald Ralls, Jr. to the Court; Exhibit B).    Donald Jr.

is a recovering alcoholic.  (PSR at 5.  129); (Exhibit D).  He has been in and out of alcohol treatment

programs several times in his adult life, and fortunately, with his father's support, at present he has

had one year of continuous sobriety.  (PSR at 5.  128-129).  He has also been diagnosed as bi-polar.

(Exhibit C).  Donald Jr. currently resides in Naperville, IL and is taking classes at the College of

DuPage.  (PSR at 5.  128-129).  As he informs the Court, Donald Jr. relies heavily on his father for

emotional, financial, and other support:

> ...[M]y Dad has supported me through alcohol and drug rehabilitation.  Without
> his sincere support and help, I know that my life would not be the way it is today,
> and I am very grateful to him and my Mother.  My Dad had a tragic childhood,
> but he never gave up and has certainly made sure that we have had a better life.
> At the present time I don't have a driver's license and my Dad drives me to
> school and to AA meetings, among most other places I need to go.  My life would
> not be the same without him.

(Exhibit D).  Quite clearly, Mr. Ralls' continued presence and support is important to Donald Jr.'s

ongoing recovery.

While Donald, Jr. finally appears to be on a promising path to recovery, the same cannot be

said of Mr. Ralls' younger son, Anthony, who plainly needs his father the most. Like Donald, Jr., Anthony also is afflicted with mental illness. He is bi-polar, and for most of his adult life, he has been in and out of treatment for drug and alcohol addiction. (Exhibit C). Due to his illness, Anthony has attempted to take his own life three times in the last six months, and six times in the last thirteen years. (See also PSR at 5. 131-132). Most recently, Anthony completed a substance abuse treatment program in Orange, California. (PSR at 5. 130-133); (Exhibit E, Certificate of Completion from South Coast Recovery Center). Mr. Ralls and his wife paid the $25,000 fee for Anthony to participate in this treatment program, and while Anthony was being treated, his father sent him weekly care packages, spending money, and most importantly, cards of encouragement. Exhibit C).

Unfortunately, this latest round of treatment did not put an end to Anthony's suicidal tendencies. When Anthony returned from California in mid-February 2008, after completing the ninety-day residential drug treatment program, he moved in with his parents. One week later, on February 25, 2008, after Mr. and Mrs. Ralls returned home from dinner, Mr. Ralls went to Anthony's bedroom to check on him. Anthony was not there. Mr. Ralls found him passed out on the living room floor. Anthony had ingested the entirety of his prescriptions for Valium and Xanax. Fortunately, Anthony was saved in the hospital emergency room. He remained in the psychiatric ward of the hospital for several days before returning to his parents home.

Based on his recent successful completion of the residential treatment program and his conduct during the week following his return home, Mr. Ralls believed that Anthony was heading in the right direction. However, this latest episode obviously renews his parents' worst fears and, thus, Mr. Ralls and his wife are committed to keeping a constant watchful eye on their troubled son. (Exhibit F, Letter from Donald Ralls, Sr.).

As the Court is surely aware, the support of family and close friends is a key factor in recovering from addiction and illness. Thus, it goes without saying that Mr. Ralls' continued presence, involvement and support is essential to Anthony's well-being and, like any loving father, Mr. Ralls desperately hopes to be able to remain by his son's side to see him through these difficult times. *Id.* Indeed, it is clear that Anthony himself recognizes the positive impact of his father in his life. Anthony describes his father as an "amazing man" and says he "could not have been born to a better father." (Exhibit B). He further describes Mr. Ralls as "the most caring and loving soul [he] know[s]," and bespeaks his need for his father: "He is a leader and definitely leads my family. We can't live without him. There is not a day in my life where I don't talk to him or use the knowledge he gives me. You see I need him and so does my family. I can't see my life without him in it everyday." *Id.*

## III.     THE OFFENSE CONDUCT AND GUIDELINES CALCULATIONS

### A.      The Conduct

There is no dispute regarding the underlying facts giving rise to the charges in this case. Those facts are recited in the plea agreement and the Pre-Sentence Report. However, while they certainly do not exculpate or excuse Mr. Ralls' conduct, there are additional facts that provide at least some context for his offense conduct and poor judgment.

For almost his entire life, Donald Ralls has battled depression. (PSR at 6. 149-150). He had a rough and difficult childhood, which abruptly ended when he was twelve years old, quit school and began working as laborer to support himself at a still tender age. (PSR at 5. 122). His father was at the very least a verbally-abusive alcoholic. (PSR at 4. 108-109). Thankfully, for most of his life, Mr. Ralls somehow escaped his father's substance abuse problem, unlike his sons Donald Jr. and

Anthony Ralls.  Nonetheless, Mr. Ralls and his sons have all been diagnosed as bi-polar.  (Exhibit C).  Mr. Ralls, like many men of his generation, struggled in silence with depression and his disorder, until approximately 2005, when he finally saw Dr. Baber, a psychiatrist in Naperville, IL. (PSR at 6. 149-156).  Mr. Ralls recently returned to Dr. Baber's care and currently receives treatment under his supervision.  *Id.*  We acknowledge and commend the role played by Pretrial Services Officer Christa Brown in causing Mr. Ralls to return to Dr. Baber's care and treatment, including resuming his use of prescribed medications.

At the time of the offense conduct, it appears that Mr. Ralls had slipped into a deep depression.  (Exhibit C).  He and his wife, Domenica, had separated.  Mr. Ralls moved out of the house they had shared, and he rented an apartment in Lisle, Illinois.  He began a relationship with another woman.  Obviously, something had caused him to change.  Yet he never severed his family connections.  As Mrs. Ralls writes in her letter to the Court:

> At the time that all these things happened, we had separated and he [was] struggling with something we couldn't identify or understand.  I know that he developed a relationship with another woman.  He totally changed and was not himself.  He was drinking and really did not know what he was doing to himself and his family. Something was wrong with him.  It seemed that life had become too much for him to cope with.  He was trying to find happiness, but he never did.  He had filed for divorce, but then never went through with it.  It was so funny that here he was divorcing me and sending me cards for every holiday, even Valentines day, Sweetest day, Easter, Thanksgiving, on and on.

*Id*.

Mr. Ralls had always relied on his wife's generosity to meet his financial needs, but now, for the first time in his adult life, he was on his own.  Thus, his depression and the emotional trauma from the separation from Domenica underlie the offense conduct.  Mr. Ralls notes that:

-8-

I have been asking myself why I did what I did. I have a hard time answering that question. I know that during that time I was having a really hard time. It was difficult period in my life. I was separated from my wife. I began a relationship with another woman. I now know that I was suffering from depression. When I was going through my difficulties with Domenica, I still tried to support my sons whenever they needed money. At first it started as me and others just taking small items available to us in the village garage to use on our cars or in our homes. But, later when we were separated, and because Dominica always made more than I did, a lot of the things I took for the village and got from the vendors helped take some of the pressure off me. But I am not looking for excuses. I know I am responsible for my actions.

(Exhibit F).

In 2000, Mr. Ralls received at least $2,137 in merchandise, services, cash, and other financial benefits from Alan Guzzino of South Harlem Auto Supply, and in 2001, he received at least $4,644 in merchandise, services, cash, and other financial benefits from Guzzino. Mr. Ralls failed to disclose to his tax preparers any of the income that he received from these business owners, thus causing false federal income tax returns for calendar years 2000 and 2001.

**B.    The Guideline Calculations**

As set forth in the plea agreement, the parties agree to the calculation of the advisory Sentencing Guidelines. With a total tax loss of $2,742, Mr. Ralls' sincere acceptance of responsibility, and no criminal history, the adjusted offense level is six. Thus, the advisory sentencing range is 0-6 months. Because the applicable guideline range is in Zone A of the sentencing table, a probationary sentence is within the applicable guideline range and imprisonment is neither required, nor necessary in this case.

As the Court is well aware, Section 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, *but not greater than necessary*' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the

law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough v. United States*, 128 S.Ct. 558, 570 (Dec 10, 2007) (quoting 18 U.S.C. §3553(a)).  As a first step, the Court must accurately calculate the sentencing guidelines and take the advisory guidelines into account. Section 3553(a) then directs the sentencing court to consider a number of factors in determining the appropriate sentence, including but not limited to "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the guidelines, and the need to "protect the public from further crimes of the defendant."  18 U.S.C. §3553 (West 2008).  The Court, of course, may also consider any additional facts or factors it deems relevant in arriving at a "reasonable" sentence.  *Gall v. United States*, 128 S.Ct. 586 (Dec. 10, 2007); *Kimbrough v. United States*, 128 S.Ct. 558 (Dec. 10, 2007); *Rita v. United States*, 127 S.Ct. 2456, 2469 (2007).

## IV.    <u>DONALD RALLS' SENTENCING REQUEST</u>

We respectfully submit that all the Section 3553 factors listed above support a lenient sentence of probation.  Don Ralls is a good man.  At the time of his offense, Mr. Ralls was experiencing a dark period of depression.  With the clouded vision of a depressed man, and subject to newfound financial pressures after separating from his wife, Don Ralls exercised extremely poor judgment and received illicit benefits from vendors to the Village of Bolingbrook.  Mr. Ralls then failed to disclose the income on his tax returns.  However, Mr. Ralls has worked tirelessly his entire life to provide for his family.  He is a decorated Vietnam War veteran who met the call of duty and served his country valiantly.  He is a devoted husband, a dedicated father on whom his children rely, and an active and engaged grandfather.  Mr. Ralls has learned his lesson and has promised the Court

that he will never be dishonest again - whether in filing his taxes, or otherwise. (Exhibit F). The tax

loss in this case, relatively speaking, was fairly minimal. In light of all the aforementioned,

probation is a sufficient but not greater than necessary punishment in this case. 18 U.S.C. §3553

(West 2008).

V.     **CONCLUSION**

    For the reasons set forth above, we respectfully ask that the Court sentence Donald Ralls to

a period of probation with any conditions the Court deems appropriate.

                        Respectfully submitted,

                    By: /s/ Theodore T. Poulos
                       One of the Attorneys for Defendant
                       Donald Ralls

Theodore T. Poulos
Terence H. Campbell
Matthew S. Ryan
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street
Suite 600
Chicago, IL 60602
Tel. 312-263-0345

## <u>CERTIFICATE OF SERVICE</u>

Theodore T. Poulos, an attorney, hereby certifies that in accordance with hereby certifies that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

Defendant Donald Ralls' Position Paper On Sentencing

was served pursuant to the District Court's ECF system as to ECF filers, including the United States Attorney's Office.

/s/  Theodore T. Poulos
Theodore T. Poulos